914 F.2d 256
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
GREEN RIVER COAL CO., INC., Petitioner,
v.
Elizabeth DOLE, Secretary of Labor, and Federal Mine Safety
and Health Review Commission, Respondents.
 No. 89-4133.
 United States Court of Appeals, Sixth Circuit.
 Aug. 30, 1990.
 
 Before NATHANIEL R. JONES and BOGGS, Circuit Judges, and GIBBONS,* District Judge.
 PER CURIAM.
 
 
 1
 Green River Coal Company, Inc. (Green River) petitions for review of an order of the Federal Mine Safety and Health Review Commission affirming the Administrative Law Judge's decision to allow in evidence Green River's history of code violations prior to November 15, 1989. Finding that the evidence was admissible, we deny the petition.
 
 
 2
 * The Secretary of Labor initiated a civil proceeding against Green River under Sec. 110(i) of the Federal Mine Safety and Health Act of 1977, 30 U.S.C. Sec. 801 et seq. (the Act). Under 30 U.S.C. Sec. 820(a), if a coal company violates a safety regulation promulgated under the Act, the Secretary must assess a civil penalty. Green River does not contest the finding of a violation; rather, it challenges the ALJ's ruling that allowed the Secretary to offer evidence of the company's code violations occurring before the date the current owners and managers assumed control.[1]
 
 
 3
 On November 15, 1988, there was a sale of Green River's corporate stock. Green River president Buddie R. Morris, an 80% owner of the company, was replaced by Larry Finley, who became a 30% owner; vice president and general manager Buddie R. Morris II was terminated; Clyde Brown, Jr. increased his ownership stake from 20% to 70%; and safety director David Harper was replaced by Mike McGregor.
 
 
 4
 On May 10, 1989, the Secretary filed a Proposal for Assessment of Civil Penalty against Green River for a code violation at a mine in Hopkins County, Kentucky. This Proposal was in response to a November 21, 1988 violation of mandatory safety standard 30 C.F.R. Sec. 75.220, for failure to comply with an approved roof control plan. Green River denied the allegation, and a hearing was held on September 12, 1989. At the hearing, Green River objected to any evidence of its history of violations prior to November 15, 1988, the date on which Green River's ownership and management changed. The ground for the objection was irrelevancy. The ALJ overruled the objection, because
 
 
 5
 Green River ... is a corporation and has been the operator of the subject mine during the entire period in question. Section 110(i) of the Act obliges me to consider "the operator's history of previous violations" as one criterion in determining an appropriate penalty.
 
 
 6
 The ALJ therefore rejected Green River's argument that it could not be held accountable for violations committed by the company when most of its stock was owned by different stockholders and it was managed by different personnel.
 
 
 7
 However, the ALJ also considered testimony favorable to Green River. Safety director Mike McGregor testified at the hearing before the ALJ that the company was much more safety conscious under Larry Finley. The Secretary's inspector, George Newlin, testified that he was aware of the changeover in November 1988 and that the change was for the better, since the company had a better attitude about safety. The ALJ then assessed a penalty of only $300, noting that "[a]lthough the history of prior violations is therefore a statutorily mandated criterion to be considered in fixing the amount of the penalty, the improved safety record and safety outlook of the new management should also be taken into consideration."
 
 II
 
 8
 Green River argues that the regulations only require the ALJ to consider the current management's history of previous violations in determining an appropriate civil penalty. The company contends that before November 1988, Buddie Morris was the operator of the mine; after November 1988, Larry Finley was the operator of the mine.
 
 
 9
 Green River claims that the two cases relied on by the Secretary, Peabody Coal Company, 1 FMSHRC 1928 (1979), and Peabody Coal Company, 1 MSHC 2071 (BNA) (1979), are inapposite. In both of those cases, the ALJ permitted the introduction of a history of code violations prior to a stock transfer, but only because there was no evidence that the mine's management had undergone any changes. There had been no substantive changes in the company's safety policies. The ALJ in those cases held that a mere "paper reorganization" would not permit "a company with an onerous history of previous violations to escape the consequences of its conduct."
 
 
 10
 Green River contends that the corporate reorganization that occurred on November 15, 1988 was much more than a "paper reorganization." In this case, a controlling interest in the company was sold and a completely new management assumed control. There was uncontradicted testimony that Green River's handling of safety matters had improved. Under these circumstances, Green River claims that it should not be penalized for the violations of what amounts to a predecessor corporation. Green River asserts that it is not sufficient that this ALJ considered Green River's improved safety record, because "Green River has no assurances the next Administrative Law Judge will be so knowledgeable and compassionate."
 
 
 11
 Green River's argument does not withstand scrutiny. The Mine Act defines an "operator" as "any owner, lessee, or other person who operates, controls, or supervises a coal or other mine or any independent contractor performing services or construction at such mine." The owner of the mine cited for violations is, and was, the Green River Coal Company. It is a legal entity, and it continues to exist independent of the individuals who own it. A stock sale does not change the legal existence of the corporation and does not relieve it of its legal history. Green River continued to operate the mine notwithstanding the personnel changes. As the Peabody cases show, a change of legal form may not be sufficient to terminate a history of prior violations, but it is certainly necessary. Green River is, and was, the "operator," not Larry Finley or Buddie Morris.
 
 
 12
 Green River did receive, as it requested, credit for its improvements in safety. To have us hold that an ALJ may never consider the history of violations by a company that has undergone a change of control would nullify Congress's express instruction in Sec. 110(i) of the Act. The better approach is to permit an ALJ to use discretion in weighing the evidence; in this case, the ALJ properly exercised discretion to admit the evidence of past violations and then to discount its significance.
 
 
 13
 Green River's petition is therefore denied.
 
 
 
 *
 The Honorable Julia Smith Gibbons, United States District Judge for the Western District of Tennessee, sitting by designation
 
 
 [1]
 Section 820(i) of the Act states in part: "In assessing civil monetary penalties, the Commission shall consider the operator's history of previous violations...." (Emphasis supplied.)